# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KATHRYN G. WHITAKER,            )
                                )
            Plaintiff,          )
                                )
    v.                          )       1:13CV423
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social   )
Security,                       )
                                )
            Defendant.          )

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Kathryn G. Whitaker, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (See Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 9, 12). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

### PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of May 30, 2003. (Tr. 288-92.) Upon denial of that application initially (Tr. 94, 135-38) and on reconsideration (Tr. 95, 142-45), Plaintiff requested a hearing de novo before an Administrative Law

Judge ("ALJ") (Tr. 146). Plaintiff and her attorney attended the hearing. (Tr. 27-45.) The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act. (Tr. 96-105.) The Appeals Council thereafter remanded the case to the ALJ for correction of multiple legal errors (Tr. 106-11), and the ALJ held a second hearing, which Plaintiff, her attorney, and a vocational expert ("VE") attended (Tr. 46-65). Upon review, the Appeals Council again remanded the case based on legal errors (Tr. 131-34), and a new ALJ held a third hearing, which Plaintiff, her attorney, and a VE attended (Tr. 67-93). The ALJ ruled Plaintiff not disabled (Tr. 7-20), and the Appeals Council thereafter denied Plaintiff's request for review, thus making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-4.)

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] last met the insured status requirements of the . . . Act on December 31, 2008.
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of May 30, 2003 through her date last insured of December 31, 2008.
>
> 3. Through the date last insured, [Plaintiff] had the following severe impairments: bilateral carpal tunnel syndrome, status post release; obesity; lumbago; arthritis of the left shoulder, with widening of the left acromioclavicular joint; depression; and anxiety.
>
> . . .

2

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . except she could never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; and occasionally bend, balance, stoop, kneel, crouch, or crawl. She could occasionally reach overhead with the left upper extremity; and frequently, but not constantly, finger, grasp, and hold bilaterally. [Plaintiff] should have avoided hazardous machinery and exposure to vibrations; and she required a sit/stand option, allowing her to perform tasks sitting or standing. She could perform simple, routine, and repetitive tasks; and have no more than frequent contact with co-workers and the public.

. . .

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

10. Through the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from May 30, 2003, the alleged onset date, through December 31, 2008, the date last insured.

(Tr. 12-20 (internal parenthetical citations omitted).)

**DISCUSSION**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

**A. Standard of Review**

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If

4

there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

5

to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. Supplemental Security Income . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

7

perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) the ALJ failed to discuss the opinions of Dr. Ajay Ajmani and "to address the conflicts between" the RFC and Dr. Ajmani's opinions, and "incorrectly stated that [the ALJ's] decision was supported by the medical opinion of Dr. [Ward] Oakley" (Docket Entry 10 at 5 (citing Tr. 18)); and

(2) the ALJ erred in his analysis of Plaintiff's credibility by finding "that she experienced lasting improvement in her pain and return of her sensation after her [carpal tunnel syndrome ("CTS")] surgeries"  (id. at 5 (citing Tr. 18)).

---

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

Defendant contends otherwise and urges that substantial evidence supports the finding of no disability. (Docket Entry 13 at 4-14.)

**Evaluation of Medical Opinion Evidence**

In Plaintiff's first issue on review, she claims that the ALJ erred by failing to "even mention" the opinions offered by Dr. Ajmani, "much less" weigh those opinions. (Docket Entry 10 at 4 (citing 20 C.F.R. § 404.1527(b) and Social Security Ruling 96-8p, <u>Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims</u>, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p")).) In particular, Plaintiff points to Dr. Ajmani's opinions that Plaintiff's "pain, weakness, numbness[,] and tingling in both hands" rendered her ability to manipulate objects "deficient," and left her "unable to lift more than ten pounds." (<u>Id.</u> at 4-5 (citing Tr. 559-60).) Further, Plaintiff challenges the ALJ's statement that Dr. Oakley's opinion supported the RFC, because Dr. Oakley advised against "repetitive" use of Plaintiff's upper extremities yet the RFC permitted "frequent" fingering, grasping, and holding. (<u>Id.</u> at 5 (citing Tr. 15, 18, 673-74).) Plaintiff's contentions with regard to Dr. Ajmani's opinions warrant relief.

The ALJ must evaluate medical source opinions using the factors outlined in 20 C.F.R. § 404.1527(c)(1) through (6), and expressly indicate and explain the weight he or she affords to such opinions. <u>See</u> 20 C.F.R. § 404.1527(c) ("<u>Regardless of its source</u>,

9

[the ALJ] will evaluate every medical opinion [he or she] receive[s]" and where an opinion does not warrant controlling weight, [the ALJ must] consider all of the . . . factors [in 20 C.F.R. § 404.1527(c)(1)-(6)] in deciding the weight [to] give to any medical opinion." (emphasis added)); Social Security Ruling 96-5p, Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183, at *5 (July 2, 1996) ("SSR 96-5p") (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions"); SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted."); see also Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (holding that reviewing court generally "cannot determine if findings are supported by substantial evidence unless the [ALJ] explicitly indicates the weight given to all of the relevant evidence").

Dr. Ajmani evaluated Plaintiff for "all over pain" on April 1, 2009 (Tr. 563; see also Tr. 566-67) and on April 6, 2009 (see Tr. 564-65), and then drafted a "To whom it may concern" letter on April 8, 2009, in which he assessed Plaintiff with carpal tunnel syndrome ("CTS"), compression arthralgia of the ulna/radius/wrist, rotator cuff damage in the left shoulder, hypertension, coronary artery disease with heart murmur, morbid obesity, degenerative

10

disease, depression, and chronic low back pain (Tr. 559-60). Dr. Ajmani opined that Plaintiff should lift or pull greater than ten pounds only a "few exceptional" times an hour in an eight-hour work day, "ha[d] difficulty standing/sitting and walking for longer than a 30[-]minute time span" and could better tolerate "rotating in these positions," could occasionally stoop, kneel, crouch, and crawl, could never climb ladders, ropes, or scaffolds, and should avoid "extreme cold" and "[m]oderate exposure" to "extreme heat, vibrations and fumes, gases, [and] poor ventilation." (Tr. 559.) Dr. Ajmani further stated that, "<u>[m]anipulative limitations predominately are unlimited to the right shoulder but the left shoulder and bilateral hands with increased grasping, reaching over head and sensation are deficient</u>." (<u>Id.</u> (emphasis added).)

Here, neither party disputes that the ALJ neglected to <u>explicitly</u> discuss Dr. Ajmani's opinions. (<u>See</u> Docket Entry 10 at 4-5; Docket Entry 13 at 4-5; <u>see also</u> Tr. 15-18.) Instead, the Commissioner argues that the ALJ had no obligation to discuss the restrictions outlined by Dr. Ajmani, because Dr. Ajmani failed to specify the extent of Plaintiff's deficiencies in manipulative ability. (Docket Entry 13 at 4.) Thus, the Commissioner maintains that Dr. Ajmani's statements "[are] 'too vague to lend any insight into the doctor's opinions as to [claimant's] specific abilities'" and do not constitute a "medical opinion within the meaning of the governing regulation." (<u>Id.</u> (quoting <u>Bruce v. Commissioner of Soc.</u>

11

Sec., No. 10-CV-10426, 2010 WL 5932326, at 8* (E.D. Mich. Dec. 9, 2010) (unpublished), recommendation adopted, 2011 WL 833792 (E.D. Mich. Mar. 4, 2011) (unpublished)).

Even if the Court agreed with the Commissioner that Dr. Ajmani's statement regarding Plaintiff's manipulative limitations remains too vague to constitute a "medical opinion" within the meaning of the regulations, see 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his/her] symptoms, diagnosis and prognosis, what [he/she] can still do despite impairment(s), and [his/her] physical and mental restrictions."), Dr. Ajmani's letter contains many other, more specific limitations regarding Plaintiff's ability to perform work-related functions, such as a significant restriction on "lifting/pulling greater than 10 pounds/hr in an 8 hr day," a limitation to occasional postural movements, and a 30-minute cap on sitting, standing, and walking at one time (Tr. 559). These opinions fall squarely within the above-quoted definition of "medical opinion" and thus the ALJ erred by failing to discuss and weigh them.

The Commissioner next asserts that the record permits an interpretation that the ALJ did consider Dr. Ajmani's letter. In that regard, the Commissioner points to the ALJ's statement that he considered "records after the date last insured [that] showed some

12

worsening after the date last insured," as well as the ALJ's remark that he engaged in "careful consideration of the entire record." (Docket Entry 13 at 5 (citing Tr. 12, 15 18).) However, even if those statements could be read to reflect <u>consideration</u> of Dr. Ajmani's letter, the ALJ still failed to <u>assign any weight</u> to Dr. Ajmani's opinions. <u>See</u> SSR 96-5p, 1996 WL 374183, at *5 (noting that ALJs "<u>must</u> weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions").

The Commissioner maintains that the ALJ's error remains harmless because Dr. Ajmani offered his opinions "over four months after" Plaintiff's date last insured ("DLI") and thus "was not addressing – and had no direct knowledge of – Plaintiff's limitations during the pertinent time period," noting that "Plaintiff first visited Dr. Ajmani only a few days before he generated the pertinent document." (Docket Entry 13 at 7.)[5]

The United States Court of Appeals for the Fourth Circuit recently addressed the issue of an ALJ's obligation to consider medical evidence that post-dates a claimant's DLI. In <u>Bird v. Commissioner of Soc. Sec. Admin.</u>, 699 F.3d 337 (4th Cir. 2012), the

---

[5] Plaintiff's insured status expired on December 31, 2008 (<u>see</u> Tr. 12) and Dr. Ajmani offered his letter opinions on April 8, 2009 (<u>see</u> Tr. 559-60). Thus, just over <u>three</u> months separates Plaintiff's DLI and Dr. Ajmani's letter, rather than over <u>four</u> months as maintained by the Commissioner (<u>see</u> Docket Entry 13 at 4, 5, 7).

13

Fourth Circuit held "that post-DLI medical evidence generally is admissible in [a Social Security] disability determination in such instances in which that evidence <u>permits an inference of linkage with the claimant's pre-DLI condition</u>." <u>Bird</u>, 699 F.3d at 341 (emphasis added) (citing <u>Moore v. Finch</u>, 418 F.2d 1224, 1226 (4th Cir. 1969)). In <u>Moore</u>, the Fourth Circuit found such linkage in medical evaluations post-dating the claimant's DLI that "reflect[ed] . . . a possible earlier and progressive degeneration." <u>Moore</u>, 418 F.2d at 1226. <u>Bird</u> further held that "retrospective consideration of medical evidence is especially appropriate when corroborated by lay evidence," such as the claimant's testimony. <u>Bird</u>, 699 F.3d at 342 (citing <u>Moore</u>, 418 F.2d at 1226).

Pursuant to <u>Bird</u>, the ALJ should have expressly considered Dr. Ajmani's letter setting out Plaintiff's functional restrictions, and explained the weight he assigned to such opinions, notwithstanding its production just over three months after Plaintiff's DLI. In the letter, Dr. Ajmani prefaces his functional restrictions by noting that Plaintiff had a <u>history</u> of left shoulder pain, low back pain, and <u>recurring</u> CTS dating back 15 years with "worsening of symptoms." (Tr. 559.) He further observed that Plaintiff's CTS surgeries "were ultimately unsuccessful." (<u>Id.</u>) Thus, Dr. Ajmani discussed multiple impairments that existed many years prior to Plaintiff's DLI and

14

continued to exist and progressively worsen past Plaintiff's DLI. (Id.) Indeed, the ALJ found that Plaintiff suffered from essentially the same impairments prior to her DLI at step two of the SEP, finding she had severe bilateral CTS, lumbago, and arthritis of the left shoulder with widening of the acromioclavicular joint. (See Tr. 13.) Accordingly, Dr. Ajmani's letter "permits an inference of linkage with [Plaintiff's] pre-DLI condition." Bird, 699 F.3d at 341.

Moreover, as in Bird, 699 F.3d at 342, and Moore, 418 F.2d at 1226, Plaintiff's hearing testimony corroborates Dr. Ajmani's functional restrictions. Plaintiff testified in November 2012 that, even after CTS surgery on both hands, she still lacked "strength in them," had "to have help opening a drink bottle," and "drop[ped] things all the time" (Tr. 72), and that the surgeries did not fix her problems with opening and grasping objects (Tr. 77). Further, Plaintiff stated that she could not lift either arm above shoulder height due to arthritis in her shoulders (Tr. 78-79) and that she has dealt with arthritis in her tailbone for 17 years since a fall (Tr. 82). Under these circumstances, the ALJ erred by failing to expressly consider and weigh Dr. Ajmani's opinions.

The Commissioner further presses the Court to treat the ALJ's error as harmless, because the RFC already reflects Dr. Ajmani's cognizable restrictions. (See Docket Entry 13 at 6-7.) The RFC does encompass some of Dr. Ajmani's restrictions – occasional

15

postural movements, a sit/stand option, no climbing of ladders, ropes, or scaffolds, no exposure to vibrations (Tr. 15), and, to the extent Dr. Ajmani found "deficient" manipulative abilities in Plaintiff's left shoulder and bilateral hands (see Tr. 559), occasional overhead reaching with the left arm, and "frequent (but not constant) fingering, grasping, and holding bilaterally" (Tr. 15).[6] Nevertheless, the ALJ's error does not qualify as harmless because the RFC deems Plaintiff capable of light work (see Tr. 15), which involves <u>occasionally</u> lifting up to <u>20</u> pounds, see 20 C.F.R. § 404.1567(b).[7] That conclusion conflicts with Dr. Ajmani's opinion that lifting <u>greater than ten</u> pounds in a work day occur only a "few exceptional" times in a given hour of a work day. (Tr. 559.)

In other words, the ALJ adjudged Plaintiff fit to lift more than 10 pounds up to one-third of an eight-hour work day (i.e., for two hours and 40 minutes a day) without considering Dr. Ajmani's finding that Plaintiff could lift more than 10 pounds only on a "few" (i.e., a small number) and "exceptional" (i.e., non-routine) occasions each hour of the workday. Given that the applicable definition of "occasionally" ranges from "very little" up to one-

---

[6] The term "frequent" "means occurring from one-third to two-thirds of the time." Social Security Ruling 83-10, <u>Titles II and XVI: Determining Capability to Do Other Work – The Medical-Vocational Rules of Appendix 2</u>, 1983 WL 31251, at *6 (1983) ("SSR 83-10").

[7] SSR 83-10 defines "occasionally" to mean "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5.

16

third of the time," SSR 83-10, 1983 WL 31251, at *5, Plaintiff potentially could perform the light jobs identified by the VE in this case (see Tr. 90-91) (or perhaps other light jobs), even crediting Dr. Ajmani's opinion on this point; however, the record at present does not address that subject. On remand, the ALJ, of course, could explore that issue if he/she ultimately accepts Dr. Ajmani's lifting limitation.[8]

Conversely, Plaintiff's challenge to the ALJ's statement that Dr. Oakley's opinion supported the RFC lacks merit. (Docket Entry 10 at 5 (citing Tr. 18).) Dr. Oakley, who performed Plaintiff's CTS surgeries, stated on May 4, 2007, that he "really [saw] no contraindications for gainful employment as long as [Plaintiff] [was] not doing anything repetitively or strenuous for her upper extremities." (Tr. 673.) Contrary to Plaintiff's assertion (see Docket Entry 10 at 5), that statement does not conflict with the RFC's allowance of "frequent" fingering, grasping, and holding (Tr. 15), because as this Court has recognized, "frequent" manipulation

---

[8] Although both the RFC (see Tr. 15) and the VE's discussion of available jobs Plaintiff could perform (see Tr. 88-92) fail to address Dr. Ajmani's opinion that Plaintiff avoid all exposure to extreme cold and moderate exposure to extreme heat, fumes, gases, and poor ventilation, that failure amounts to harmless error, because none of the three jobs cited by the VE, shipping/receiving weigher (G.P.O., Dictionary of Occupational Titles, No. 222.387-074, 1991 WL 672108 (4th ed. rev. 1991) ("DOT")), small parts assembler (DOT, No. 706.684-022, 1991 WL 679040), and electronics worker (DOT, No. 726.687-010, 1991 WL 679633), involve any of these environmental conditions. See U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles 45, Appendix D-2 (1993) (indicating that exposure to "atmospheric conditions" involves "fumes, noxious odors, dusts, mists, gases, and poor ventilation that affect the respiratory system, eyes, or the skin").

17

does not equate to "repetitive" work with the hands. See Harrington v. Astrue, No. 1:06-cv-00936, 2008 WL 819035, at *5 (M.D.N.C. Mar. 21, 2008) (unpublished) ("The Dictionary of Occupational Titles (hereinafter, the "DOT") defines 'frequently' as '[e]xists from 1/3 to 2/3 of the time.' See, e.g., DOT # 355.377-018. Although it does not define the term 'repetitive,' it is clear that the DOT does not use this term to describe 'physical demand' as it does the terms occasionally, frequently, and constantly. See id. The DOT uses the term 'repetitive' when describing the 'temperament' of a job. . . . Clearly, it is possible to do something repeatedly without doing it a set fraction of the time."); see also Arnett v. Colvin, No. 1:10-cv-00703, 2013 WL 476184, at *4 (M.D.N.C. Sept. 5, 2013) (noting that including limitation to frequent fine manipulation in RFC would fully accommodate physician's "no repetitive work" opinions).

In light of the recommendation to remand, and because the ALJ's evaluation of Dr. Ajmani's opinions will necessitate reevaluation of Plaintiff's credibility, no need exists for the Court to determine the merits of Plaintiff's second assignment of error that the ALJ erred in his analysis of Plaintiff's credibility.

18

## CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be reversed and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings to include evaluation of Dr. Ajmani's opinions in accordance with 20 C.F.R. § 404.1527. As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 9) should be granted to the extent it seeks remand, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) should be denied.

                              /s/ L. Patrick Auld
                            **L. Patrick Auld**
                   **United States Magistrate Judge**

December 18, 2015